UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
:
LAWRENCE MALZBERG,                                              :
:
:
:
                     Plaintiff,       :    19-cv-10048 (LJL)
     -v-                                                      :
:    MEMORANDUM &
NEW YORK UNIVERSITY,                                            :    ORDER
:
                     Defendant.       :
:
--------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __7/2/2020__

LEWIS J. LIMAN, United States District Judge:

      Plaintiff Laurence Malzberg ("Malzberg") brings this action complaining that Defendant New York University ("NYU") discriminated against him on the basis of his disability, in violation of the Americans with Disabilities Act ("ADA"), by failing to offer him a reasonable accommodation for his disability, resulting in his constructive discharge. He also asserts related claims under the New York City Human Rights Law. Pending before the Court is Malzberg's motion to compel discovery pursuant to Fed. R. Civ. P. 37(a)(3).

## BACKGROUND

    A.  <u>The Complaint's Allegations</u>

      Malzberg was employed by NYU at the NYU Langone Medical Center ("LMC") as a physicians' assistant from 2001 until his termination on April 1, 2019.[1] Compl. ¶ 10. He spent the first four and a half years of his career in the Spine Center at NYU's Hospital for Joint Diseases. *Id.* ¶ 11. Thereafter, from July 2005 to November 2012, he worked in NYU Hospital's Interventional Radiology Department ("IR"). *Id.* ¶ 12. From November 2012 until

---

[1] All facts are taken from Plaintiff's complaint ("Compl.") and are taken as true for the purposes of this opinion.

1

his termination, he worked in the Faculty Practice Organization's outpatient CT Scan unit and part-time in IR. *Id.* ¶ 15.

The events at issue in the case transpired from approximately 2017 to April 2019. *Id.* ¶¶ 32-86. Malzberg suffers from chronic back pain, a medical condition that he disclosed in 2017 to Dr. Akhilesh Sista, Chief of Staff of IR. *Id.* ¶ 32. In addition, he suffered from early-onset cataracts—a condition he attributes to radiation exposure he received on the job—resulting in surgeries in both eyes in November 2018. *Id.* ¶¶ 41, 43. He experienced a retinal tear in October 2018 and a detached retina in November 2018, both of which required emergency surgery and which resulted in his absence from work for several weeks following the surgery. *Id.* ¶ 42. He alleges that, after having received positive job performance reviews during his career, "he was hounded by his superiors for suffering health issues in 2018." *Id.* ¶ 23.

Those superiors allegedly include Abu Yousuf, Malzberg's supervisor in the CT Scan unit, who explicitly raised Malzberg's health issues in his annual review and falsely criticized Malzberg for not timely reporting sick leaves he would need to take, *id.* ¶¶ 28-30; Dr. Leon Ryback, the Vice Chair of Operations in the Radiology Department, *id.* ¶¶ 36-39; Dr. Sista, who served as Dr. Ryback's Chief of Staff, *id.* ¶ 40; and Dan Alexa, an administrator from the radiology department, *id.* ¶ 46. Ryback, Sista, and Alexa allegedly pressured Malzberg to work full-time in IR notwithstanding the health issues that would make working in that department physically painful and possibly harmful, failing to offer Malzberg a reasonable accommodation. *Id.* ¶¶ 46-52. Allegedly, when Malzberg asked Dr. Ryback what would happen if he refused the assignment for health reasons, Dr. Ryback responded that if he did not take the IR position, "that was it." *Id.* ¶ 51. A representative from NYU's Human Resources ("HR") Department also told Malzberg that if he did not accept the transfer to IR because the job would be painful and would

negatively affect his health, he would be seen as quitting.  *Id.* ¶ 56.  She moreover warned Malzberg that not only would he lose his job, but NYU would penalize him by not paying him his vacation days and by not offering him unemployment insurance benefits.  *Id*.  Malzberg alleges that in late February and early March 2019, after having applied for the job, he was offered a position in the Dysautonomia Center, run by Dr. Horacio Kaufmann.  *Id*. ¶¶ 60-68.  He claims, however, that after he received the offer, Alexa told him that he needed to start immediately in IR "in case that [job] doesn't come through."  *Id.* ¶ 69.  An HR representative then contacted Malzberg, withdrawing Dr. Kauffman's offer of employment.  *Id*. ¶¶ 71-72.  On March 27, 2019, another HR Manager met with Malzberg at Malzberg's request to discuss the potential transfer to IR, along with Malzberg's health issues; the day after, the HR Manager sent him an email that mentioned "secreted in the fourth paragraph" that the IR department would work to provide a reasonable accommodation.  *Id*. ¶¶ 77-80.  When Malzberg showed up for work on Monday, April 1, 2019, he was handed a letter signed by Alexa and dated March 26, 2019, informing him that he would be "released" from his position or, in other words, that he was being fired.  *Id*. ¶¶ 86-87.

    B.  <u>The Discovery Request</u>

The instant dispute involves Plaintiff's Request for Production of Documents #16.  Request #16 reads as follows: "All documents referring, reflecting, or relating to any Complaints and/or charges of discrimination on the basis of disability filed against Defendant with the New York City Commission on Human Rights, the Equal Employment Opportunity Commission, the United States Department of Labor, a state or federal court, or any other human rights agency from January 1, 2010 through the present."  Pl. Br. at 1.

Following meet-and-confer discussions that occurred between the parties, Malzberg narrowed his request and now asks for the following:

> All documents referring, reflecting, or relating to any:
> (a) Complaints and/or charges of discrimination on the basis of disability filed against Defendant with the New York City Commission on Human Rights, the Equal Employment Opportunity Commission, the United States Department of Labor, a state or federal court, or any other human rights agency, from January 1, 2014, through the present, by any current or former employees of NYU Langone Orthopedic Hospital (previously known as the Hospital for Joint Diseases), the NYU Faculty Practice Organization's outpatient CT Scan unit, and/or NYU Langone's Interventional Radiology Department.
> (b) Complaints and/or charges of discrimination on the basis of disability filed against Defendant with the New York City Commission on Human Rights, the Equal Employment Opportunity Commission, the United States Department of Labor, a state or federal court, or any other human rights agency, from January 1, 2014, through the present, which specifically contain allegations against Dr. Akhilesh Sista, Dr. Leon Rybak, and/or Dan Alexa.
> (c) Requests for reasonable accommodations made by any current or former employees of NYU Langone Orthopedic Hospital (previously known as the Hospital for Joint Diseases), the NYU Faculty Practice Organization's outpatient CT Scan unit, and/or NYU Langone's Interventional Radiology Department from January 1, 2014, through the present, and any responses thereto.

*Id.* at 1-2.

For their part, Defendants offer the following compromise: they would produce "documents related to any complaints and/or charges of discrimination on the basis of disability filed against Daniel Alexa, Dr. Leon Rybak, and Dr. Akhilesh Sista dating back to August 2017." Opp. Br. at 1.

## DISCUSSION

The Federal Rules of Civil Procedure permit discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Relevance is . . . to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, 2016 WL 3906712,

4

at *3 (S.D.N.Y. July 14, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). As a general matter, in an employment discrimination case such as this, evidence regarding similar acts is relevant to the plaintiff's claim. *See, e.g., Ortega v. Fedcap Rehab. Servs., Inc.*, 2003 WL 21383383, at *1 (S.D.N.Y. June 16, 2003) ("[b]ecause intent is in issue [in discrimination cases] . . . similar act evidence may be admissible." (citing Fed. R. Evid. 404(b)). "Evidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive." *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 204 (2d Cir. 2014); *see also Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir. 1990) ("It is well-settled that an individual disparate treatment plaintiff may use statistical evidence regarding an employer's general practices at the pretext stage to help rebut the employer's purported nondiscriminatory explanation."). Indeed, "employers rarely leave a paper trail—or "smoking gun"—attesting to a discriminatory intent. . . . [and so] disparate treatment plaintiffs often must build their cases from pieces of circumstantial evidence which cumulatively undercut the credibility of the various explanations offered by the employer." *Id.* at 85. Even then, discovery is often limited to plaintiffs' "supervisors and to their division." *Curtis v. Citibank, N.A.*, 70 Fed. Appx. 20, 24 (2d Cir. 2003). "This limitation is commonly imposed in cases where an individual plaintiff does not allege a company-wide pattern or practice of discrimination, or where the allegations focus on a particular employment action in which decision-making was limited to that plaintiff's employment unit." *Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 567 (S.D.N.Y. 2013). Finally, even if discovery is relevant, Rule 26(b)(1) instructs that it must be "proportional to the needs of the case." *See, e.g.*, *Mortg. Resolution Servicing,* 2016 WL 3906712, at *3 (S.D.N.Y. July 14, 2016).

Applying the aforementioned considerations, the Court determines that

> complaints and/or charges of discrimination on the basis of disability filed against Defendant with the New York City Commission on Human Rights, the Equal Employment Opportunity Commission, the United States Department of Labor, a state or federal court, or any other human rights agency, by any current or former employees of NYU Langone's Interventional Radiology Department and alleging discrimination on the basis of disability by any member of the Interventional Radiology Department

come within the scope of Rule 26(b)(1) and should be produced. The relevant time period is from January 1, 2017 through the present. Analogously,

> requests for reasonable accommodations made by any current or former employees of NYU Langone's Interventional Radiology Department and any responses thereto

over the same time period are also appropriate for discovery.

The Court has considered but rejects Defendant's argument that Plaintiff's allegations do not extend beyond the actions of Alexa, Rybak, and Sista, and that discovery of records not concerning these three individuals would be irrelevant. Opp. Br. at 2. Defendant cites *Taylor v. Metro. Transportation Auth.*, which denied a discovery motion for broad company records of discrimination, in part due to the plaintiff's failure to state their relevancy. 2019 WL 2766502, at *2 (S.D.N.Y. July 2, 2019). Here, Plaintiff has made a showing of relevance with respect to complaints against representatives of IR generally. First, the actions of various HR representatives play a key role in Plaintiff's complaint. Compl. ¶¶ 55-56, 71-74, 76-78. Moreover, while Plaintiff specifically identifies Alexa, Rybak, and Sista as engaging in discriminatory behavior, Plaintiff appears to consider their actions as representative of a broader institutional practice of discrimination against him. Plaintiff describes a sequence of events from January to April 2019, during which several individuals in IR and HR repeatedly pressured him to work in conditions that would be harmful given Plaintiff's medical issues. Compl. ¶¶ 36-90. Throughout the complaint, Plaintiff attributes his disparate treatment to NYU, rather than to the

three individuals to whom Defendant would limit the complaint.  *See, e.g.*, Compl. ¶ 31 ("Malzberg was made to feel as if NYU was trying to build some kind of case against him due to his recent medical emergencies."); *id.* ¶ 52 ("NYU had given him an ultimatum."); *id.* ¶ 73 ("NYU had intervened and thwarted Dr. Kauffmann's offer of employment."); *id.* ¶ 93 ("As a result of NYU's actions, Mr. Malzberg suffered loss of employment.").  This is in stark contrast to *Taylor*, where "Plaintiff alleges that only Mr. Ashraf created a hostile work environment by pressuring her to convert to Islam." *Taylor v. Metro. Transportation Auth.*, 2019 WL 2766502, at *2 (S.D.N.Y. July 2, 2019).  And even then, the *Taylor* court noted that "[r]ecords of other religious discrimination and retaliation complaints, especially the manner they were handled by Defendants, may . . . be relevant to Defendants' intent and knowledge" and accordingly gave the plaintiff in that case leave to refile her motion to compel discovery.  *Id.* at *2-3.

      At the same time, however, Plaintiff has not made a showing of relevance with respect to the other departments at NYU.  Plaintiff's complaint focuses almost exclusively on his experience working in IR.  And indeed, it was Plaintiff's supervisors in IR that ultimately moved to terminate his employment.  *Id.* ¶ 87.

      The Court has also considered the question of proportionality.  Defendant claims that it did not sort discrimination complaints by department prior to August 2017 and did not implement a comprehensive electronic database until August 2019.  Opp. Br. at 3.  It argues that it therefore would need to "search thousands of electronic files" to produce documents dating back to 2014, a process that "would likely involve weeks of searching by numerous individuals" who are "already heavily burdened by the COVID-19 pandemic."  Opp. Br. at 3.  At the same time, however, it implicitly acknowledges that it is able to retrieve documents with respect to Alexa, Rybak, and Sista; its proposed compromise so admits.  Defendant has not made a

showing that it would be excessively burdensome for Defendant to reach back to the beginning of 2017 for the entire IR department.  *See Citizens Union of City of New York v. Attorney Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) ("[T]he party withholding discovery on the grounds of burden, expense, privilege, or work product bears the burden of proving the discovery is in fact privileged or work product, unduly burdensome and/or expensive.").  Moreover, Defendant admits that "[b]etween January 1, 2017 [and] August 15, 2019, an outside vendor handled NYU's accommodation requests," Opp. Decl. ¶ 16; a company specializing in the collection of such data would likely be well-equipped to retrieve and deliver it.  Plaintiff's complaint centers on actions taken in 2018 and early 2019; complaints dating back to 2017 with respect to the IR department generally (and not just concerning Alexa, Rybak, and Sista) are plainly relevant.  Finally, to the extent that Defendant's burden is a function of its own record-keeping, that factor that should not prejudice Plaintiff's ability to obtain clearly relevant information.  *See, e.g.*, *Fish, LLC v. Harbor Marine Maint. & Supply, Inc.*, 2018 WL 1121332, at *3 (W.D. Wash. Mar. 1, 2018) ("The Court is sympathetic to Defendant's claim that Plaintiffs' interrogatory . . . would require a tremendous amount of time to respond, given the limitations of [Defendant's] recordkeeping system.  But this is Defendant's concern, not Plaintiffs'."); *Phillips v. Clark County Sch. Dist.*, 2012 WL 135705, at *14 (D. Nev. Jan. 18, 2012) ("The fact that production of documents will be time consuming and expensive is not ordinarily a sufficient reason to grant a protective order if the requested material is relevant and necessary to the discovery of admissible evidence . . . Nor can a party rely on an inadequate record keeping system as an excuse for not locating and producing relevant information.").[2]

---

[2] Because the relevance of pre-2017 documents that do not allege discrimination against Alexa, Rybak, and Sista is much more attenuated, and because Plaintiff has not made a strong argument for those documents, the Court will not permit discovery from earlier than 2017 except as indicated below.

The Court reaches a different result with respect to Sista, Rybak, and Alexa. Defendants are ordered to produce

> complaints and/or charges of discrimination on the basis of disability filed against Defendant with the New York City Commission on Human Rights, the Equal Employment Opportunity Commission, the United States Department of Labor, a state or federal court, or any other human rights agency, from January 1, 2014, through the present, which specifically contain allegations against Dr. Akhilesh Sista, Dr. Leon Rybak, and/or Dan Alexa.

All parties admit that documents alleging discrimination against these three individuals are highly relevant to this case. They are still relevant if they date back to 2014. Moreover, because the three individuals are directly implicated by Plaintiff's allegations and are readily accessible to NYU, it is not excessively burdensome for Defendant to engage in the reasonable search required by the Federal Rules. Defendant might, for example, interview the three—as well as others in the IR Department and at NYU more broadly—about whether complaints were lodged against these three individuals.

For the reasons discussed above, the Court GRANTS IN PART Plaintiff's motion to compel discovery and orders Defendants to produce the following:

> All documents referring, reflecting, or relating to any:
> (a) Complaints and/or charges of discrimination on the basis of disability filed against Defendant with the New York City Commission on Human Rights, the Equal Employment Opportunity Commission, the United States Department of Labor, a state or federal court, or any other human rights agency, from January 1, 2014, through the present, which specifically contain allegations against Dr. Akhilesh Sista, Dr. Leon Rybak, and/or Dan Alexa.
> (b) Complaints and/or charges of discrimination on the basis of disability filed against Defendant with the New York City Commission on Human Rights, the Equal Employment Opportunity Commission, the United States Department of Labor, a state or federal court, or any other human rights agency, from January 1, 2017, through the present, by any current or former employees of NYU Langone's Interventional Radiology Department and alleging discrimination on the basis of disability by any member of the Interventional Radiology Department.

(c) Requests for reasonable accommodations made by any current or former employees of NYU Langone's Interventional Radiology Department from January 1, 2017, through the present, and any responses thereto.

SO ORDERED.

Dated: July 2, 2020
New York, New York

_____
LEWIS J. LIMAN
United States District Judge