UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAURENCE MALZBERG,                    Civil Action No.: 19-cv-10048 (LJL)

                         Plaintiff,

           - against -

NEW YORK UNIVERSITY

                         Defendant.

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT

Joan M. Gilbride
Esther B. Feuer
KAUFMAN BORGEEST & RYAN LLP
120 Broadway, 14th Floor
New York, New York 10271
Telephone: 212.980.9600
Facsimile: 212.980.9291

7466798

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................. 1

STATEMENT OF FACTS .................................................... 2

PROCEDURAL HISTORY ................................................... 6

STANDARD OF LAW ...................................................... 7

ARGUMENT ............................................................. 8

    POINT I-   PLAINTIFF DOES NOT HAVE A DISABILITY WITHIN THE MEANING
    OF THE ADA ....................................................... 9

    A. Plaintiff's Alleged Back Pain is Not a Disability Under the ADA .................. 10

        1. Plaintiff's Back Pain Does Not Substantially Limit A Major Life Activity 10
        2. Plaintiff Has No Medical Evidence of His Alleged Back Pain ................. 12
    B. Plaintiff's Corrected Eye Impairments Are Not a Disability ........................... 15

    POINT II-   PLAINTIFF FAILED TO ENGAGE IN THE INTERACTIVE PROCESS
    WITH NYU ........................................................ 17

    A. Mr. Malzberg Caused the Breakdown of the Interactive Process .................... 17

    B. Plaintiff Cannot Show that He Can Perform the Essential Functions of the Job
    With or Without Reasonable Accommodations ........................................ 22

    POINT III-   THE COURT SHOULD ALSO DISMISS PLAINTIFF'S NYCHRL
    CLAIM ........................................................... 24

    A. Plaintiff Cannot Show That He Has A Disability Within the Meaning of the
    NYCHRL .......................................................... 24

    B. Plaintiff Also Failed to Engage In The Interactive Process Under the
    NYCHRL .......................................................... 26

CONCLUSION ........................................................... 287

i

## TABLE OF AUTHORITIES

**Cases**

*2 Perlman Drive, LLC v. Stevens*,
54 Misc. 3d 1215(A) (N.Y. Civ. Ct. 2017) .......................................................... 25, 26

*Amendola v. Henderson*,
182 F. Supp. 2d 263 (E.D.N.Y. 2001) ....................................................................... 16

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...................................................................................................... 7

*Boughton v. Town of Bethlehem*,
No. 1:13-CV-01583, 2015 WL 5306077 (N.D.N.Y. Sept. 10, 2015) ..................... 20, 21

*Castagnozzi v. Phoenix Beverages, Inc.*,
208 F. Supp. 3d 461 (E.D.N.Y. 2016) ................................................................... 11, 12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...................................................................................................... 7

*Charlotten v. May Dep't Stores Co.*,
No. 97 CIV. 8962 (HB), 1998 WL 635547 (S.D.N.Y. Sept. 16, 1998) ...................... 15

*Colwell v. Suffolk Cty. Police Dep't*,
158 F.3d 635 (2d Cir. 1998) .......................................................................................... 9

*Cruz v. Schriro*,
51 Misc. 3d 1203(A) (N.Y. Sup. Ct. 2016) ........................................................... 25, 26

*Douglas v. Victor Cap. Grp.*,
21 F. Supp. 2d 379 (S.D.N.Y. 1998) .......................................................................... 13

*Dudley v. N.Y.C. Housing Auth.*,
No. 12 Civ. 2771(PGG), 2014 WL 5003799 (S.D.N.Y. Sept. 30, 2014). .................. 16

*E.E.O.C. v. Yellow Freight Sys., Inc.*,
No. 98 CIV. 2270(THK), 2002 WL 31011859 (S.D.N.Y. Sept. 9, 2002) ...................... 9

*Emanuel v. New York* ,
No. 8 Civ. 1250, 2009 WL 4277075 (S.D.N.Y. Nov. 25, 2009) ........................... 14, 25

*Fagan v. United Int'l Ins. Co.*,
128 F. Supp. 2d 182 (S.D.N.Y. 2001) ......................................................................... 15

7466798

*Felix v. New York City Transit Auth.*,
154 F. Supp. 2d 640 (S.D.N.Y. 2001) .................................................................. 17, 18

*Gilbert v. Frank*,
949 F.2d 637 (2d Cir.1991) ....................................................................................... 23

*Goenaga v. March of Dimes Birth Defects Found*,
51 F.3d 14 (2d Cir. 1995) ........................................................................................... 7

*Goonan v. Fed. Rsrv. Bank of New York*,
No. 12-CV-3859 JPO, 2014 WL 3610990 (S.D.N.Y. July 22, 2014) ......................... 21

*Heilweil v. Mount Sinai Hosp.*,
32 F.3d 718 (2d Cir. 1994) ....................................................................................... 14

*Hernandez v. Int'l Shoppes, LLC*,
100 F. Supp. 3d 232 (E.D.N.Y. 2015) ....................................................................... 23

*Holmes v. New York City Dep't of City Wide Admin. Servs.*,
No. 14-CV-8289 KBF, 2015 WL 1958941 (S.D.N.Y. Apr. 30, 2015) ......................... 16

*Jackan v. New York State Dep't of Labor*,
205 F.3d 562 (2d Cir.2000) ...................................................................................... 17

*Jacobsen v. New York City Health & Hosps. Corp.*,
22 N.Y.3d 824 (2014) ............................................................................................... 27

*Jermosen v. Coughlin*,
877 F.Supp. 864 (S.D.N.Y.1995) ............................................................................... 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ................................................................................................... 7

*McBride v. BIC Consumer Prod. Mfg. Co.*,
583 F.3d 92 (2d Cir. 2009) ......................................................................................... 8

*McDonnell Douglas Corp. v. Green*
411 U.S. 792 (1973) ................................................................................................... 8

*McElwee v. Cnty. of Orange*,
700 F.3d 635 (2d Cir.2012) ...................................................................................... 22

*McMillan v. City of New York*,
711 F.3d 120 (2d Cir. 2013) ....................................................................................... 8

*Meiri v. Dacon*,
759 F.2d 989 (2d Cir. 1985) ....................................................................................... 7

7466798

*Melendez v. Cty. of Westchester,*
No. 17-CV-9637 (NSR), 2019 WL 251731 (S.D.N.Y. Jan. 16, 2019),.........................................9

*Monterroso v. Sullivan & Cromwell*, LLP,
591 F. Supp. 2d 567 (S.D.N.Y. 2008)........................................................................................18

*Murray v. Sysco Corp.*,
1998 WL 160826 (N.D.N.Y.1998).............................................................................................15

*Nadel v. Shinseki,*
57 F. Supp. 3d 288 (S.D.N.Y. 2014).....................................................................................13, 16

*Nieblas-Love v. New York City Hous. Auth.*,
165 F. Supp. 3d 51(S.D.N.Y. 2016)...........................................................................................25

*Noel v. BNY-Mellon Corp.*,
No. 10 CIV. 9143 JSR, 2011 WL 4633884 (S.D.N.Y. Oct. 4, 2011).............................19, 20, 21

*Norman v. NYU Langone Health Sys.*,
492 F. Supp. 3d 154 (S.D.N.Y. 2020)....................................................................................11, 12

*Nugent v. St. Lukes–Roosevelt Hosp. Center,*
303 Fed.Appx. 943 (2d Cir.2008).........................................................................................18, 20

*Pabon v. N.Y.C. Transit Auth.*,
703 F.Supp.2d 188 (E.D.N.Y.2010).............................................................................................23

*Phillips v. City of New York,*
66 A.D.3d 170 (1st Dep't 2009)..................................................................................................26

*Ryan v. Grae & Rybicki, P.C.*,
135 F.3d 867 (2d Cir. 1998).........................................................................................................10

*Santiago v NY City Police Dep't,*
No. 05-CV-3035, 2007 U.S. Dist. LEXIS 91880 (S.D.N.Y. Dec. 14, 2007) ...............................11

*Shannon v. N.Y.C. Transit Auth.*,
332 F.3d 95 (2d Cir. 2003)...........................................................................................................23

*Sivio v. Vill. Care Max,*
436 F. Supp. 3d 778 (S.D.N.Y. 2020).........................................................................................18

*Stola v. Joint Indus. Bd.*,
889 F.Supp. 133 (S.D.N.Y.1995).................................................................................................18

*Stuart v. T-Mobile USA, Inc.*,
No. 14-CV-4252 JMF, 2015 WL 4760184 (S.D.N.Y. Aug. 12, 2015).........................................27

7466798

*Sussle v. Sirina Prot. Sys. Corp.*,
269 F. Supp. 2d 285 (S.D.N.Y. 2003)............................................................................ 9, 12, 13, 14

*Van Ever v. N.Y. State Dep't of Corr. Servs.* ,
No. 99 Civ. 123448, 2000 WL 1727713 (S.D.N.Y. Nov. 21, 2000) ........................................... 14

*Vangas v. Montefiore Med. Ctr.*,
6 F. Supp. 3d 400 (S.D.N.Y. 2014) ........................................................................................ 26

*Veldran v. Brennan*,
408 F. Supp. 3d 111 (E.D.N.Y. 2019) ..................................................................................... 16

*Veldran v. Dejoy*,
839 F. App'x 577 (2d Cir. 2020)............................................................................................. 16

*Vitti v. Macy's Inc.*,
No. 14-CV-5108 (RJS), 2017 WL 6405848 (S.D.N.Y. Sept. 29, 2017) ..................................... 13

*Weixel v. Bd. of Educ.*,
287 F.3d 138 (2d Cir. 2002)..................................................................................................... 9

*Wellington v. Spencer-Edwards*,
No. 16 CIV. 6238 (AT), 2019 WL 2764078 (S.D.N.Y. July 1, 2019) ......................................... 7

*Zito v. Donahoe*,
915 F. Supp. 2d 440 (S.D.N.Y. 2012).................................................................................. 20, 21

*Zuppardo v. Suffolk Cty. Vanderbilt Museum*,
19 F. Supp. 2d 52 (E.D.N.Y. 1998) ........................................................................................ 14

**Statutes**
Americans with Disabilities Act, 42 U.S.C. § 12102  ........................................................ passim
New York City Human Rights Law, New York City Admin. Code § 8-102 ........... 1, 6, 24, 25, 26

**Rules**
Fed. R. Civ. P. 56.................................................................................................................. 1, 7

7466798

Defendant New York University ("NYU" or the "Hospital" or "Defendant") by its attorneys Kaufman Borgeest & Ryan LLP respectfully submits this memorandum, of law in support of Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56.

## PRELIMINARY STATEMENT

Plaintiff Laurence Malzberg ("Plaintiff" or "Mr. Malzberg") refused to accept a change in his job responsibilities, never requested an accommodation from the Hospital, and admittedly ignored an offer from the Hospital's Human Resources representative to engage in the interactive process, but nevertheless alleges that Defendant violated the Americans with Disabilities Act ("ADA") and the New York City Human Rights Law ("NYC HRL") by failing to provide him with a reasonable accommodation for an alleged disability. Plaintiff's claims are entirely meritless and should be dismissed. Plaintiff cannot establish a *prima facie* failure to accommodate claim because he is unable to meet the most basic threshold requirement: he is not disabled under the meaning of either statute. Even if Mr. Malzberg had a disability within the meaning of the ADA or the NYC HRL, which he does not, Plaintiff thwarted the interactive process by failing to engage in a cooperative dialogue with the Hospital, and cannot recover on his failure to accommodate claim. Mr. Malzberg failed to request an accommodation, provide any evidence of his alleged disability, respond to NYU's offer to provide accommodations and failed to meet his burden of proving that a reasonable accommodation existed that would allow him to perform the essential functions of the offered job. Accordingly, the Hospital is entitled to summary judgment on all of Plaintiff's claims.

## STATEMENT OF FACTS

In 2001 Plaintiff began his career as a Physician's Assistant ("PA") in the Spine Center of the Hospital for Joint Disease.[1]  He transferred to the Interventional Radiology Department ("IR") at NYU School of Medicine in July 2005 where he received training to insert Peripherally Inserted Central Catheters ("PICC lines"), and to place and remove catheters and ports, including drainage catheters, mediport and permcath.[2] He became proficient in these skills and inserted PICC lines at several NYU locations, including what was then called the NYU Hospital for Joint Disease ("HJD") (now, NYU Langone Orthopedic Hospital), NYU Grossman School of Medicine, and other offsite locations.[3]

Following Hurricane Sandy in 2012, Mr. Malzberg occupied a dual role in which he assisted with CT Scans at NYU Langone Medical Center Faculty Group Practice ("FGP") part of the time, and continued to insert PICC lines at the HJD.[4] Mr. Malzberg performed this job until the end of his employment with NYU, without any complaints about any physical limitations which substantially limited his major life activities or inhibited his ability to perform the essential functions of the job.[5] Mr. Malzberg also did not provide NYU with any medical evidence of physical limitation or submit any request for disability accommodation.[6]

In or around 2018, Mr. Malzberg had four (4) separate eye surgeries to repair a detached retina and correct cataracts.[7] He took off time from work for these procedures, but when he

---

[1] The Hospital for Joint Disease merged with NYU Medical Center (now NYU Langone Health) in 2006.
[2] *See* Declaration of Joan M. Gilbride ("Gilbride Decl."), Exhibit ("Ex.") "B," Malzberg Deposition Transcript ("Dep. Tr.") at pp. 17-18.
[3] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 54-57.
[4] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 61, 63-66.
[5] Id.
[6] Id.
[7] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 109-110.

7466798

returned to work, he returned without medical restrictions.[8] Other than time off to obtain these procedures, which NYU granted, Mr. Malzberg never requested any accommodations from NYU in connection with any alleged medical issues related to his eyes.[9] The surgeries fully corrected Mr. Malzberg's eye impairments and following these procedures Mr. Malzberg did not experience any issues with his vision.[10]

According to Mr. Malzberg, he had MRI scans of his back in 2006 and 2008.[11] Mr. Malzberg did not give NYU any medical documentation indicating any restrictions on his job performance related to his back and did not request accommodations related to any back pain at any point in his employment.[12]

For his entire eighteen (18) year career, Mr. Malzberg performed the duties of his job, including using radiation to insert PICC lines, without accommodation.[13] To protect him from radiation, NYU provided Mr. Malzberg (and any medical professional performing procedures using radiation) with protective gear including a lead apron, collar, and glasses.[14] Mr. Malzberg wore this protective equipment when performing procedures using radiation.[15]

The staffing needs in the Radiology department changed over time and, in early 2019, NYU determined that it no longer had a need for Mr. Malzberg's current position.[16]  It did, however, require a PA with his skillset for a full time position in IR, where he previously

---

8 Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 109-110, 252-253
9 Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 109-110, 117-8,  251-253, 256-7.
10 Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 253:6-11.
11 Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 213-4.
12 Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 120-1, 213-4, 237-9.
13 Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 87-8.
14 Gilbride Decl., Ex. "F," Rybak Dep. Tr.  at p. 77:14-23; Gilbride Decl., Ex. "A," Complaint ¶¶ 14-5;
Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at p. 256:14 – 257:14
15 Id.
16 Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 125-7, 129-130.

7466798

worked, performing a role similar to his then current role.[17] On February 14, 2019, Dr. Leon Rybak, Dr. Akhilesh Sista, and Daniel Alexa met with Mr. Malzberg to explain that his current position would be eliminated and offer him the open position in IR.[18]  During the meeting, Mr. Alexa told Mr. Malzberg that NYU would provide any training Mr. Malzberg needed to feel comfortable in the position in IR..[19] Mr. Malzberg did not accept the open IR position during that meeting.[20]

The parties dispute whether Mr. Malzberg mentioned any physical concerns at that meeting.  However, the parties agree that Mr. Malzberg did not request an accommodation at the February 14th meeting that would allow him to perform the essential functions of the offered position.[21] Instead, Mr. Malzberg applied for an internal job in the NYU system in the Dysautonomia Center.[22]  Mr. Malzberg learned that he did not receive a job offer for this position on March 15, 2019.[23]

Shortly thereafter, on March 27, 2019, Plaintiff met with Human Resources Manager Evelyn Taveras.[24] During that meeting, Mr. Malzberg told Ms. Taveras that he believed he was being fired and wanted to know what severance was available.[25]  He said that he was not accepting the new job responsibilities and said it was because he had a "physical disability" and

---

[17] Id.
[18] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 125, 129-130, 171.
[19] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 126-8.
[20] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 135, 210, 213.
[21] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 135, 141-2, 219-20.
[22] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 151-5.
[23] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 184-6.
[24] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 211-2, 215; Gilbride Decl., Ex. "G," Taveras Dep. Tr. at p. 60.
[25] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 214-5; Gilbride Decl., Ex. "G," Taveras Dep. Tr.at p. 62.

7466798

pain with his back, but provided no detail, no medical information and requested no accommodation.[26]  He also alleged that he was being treated differently based upon his age.[27]

The following day, Ms. Taveras followed up with Mr. Malzberg in writing, summarizing the substance of their meeting, including Mr. Malzberg's allegation of age discrimination and engaging him in the interactive process with regard to the medical issues he mentioned.[28]  Ms. Taveras notes in her email (which Mr. Malzberg never disputed) that Mr. Malzberg told her that he "would not transition to this role and that [he] believed [he was] entitled to severance."[29] Since Mr. Malzberg had not yet accepted the new job responsibilities, Ms. Taveras told Mr. Malzberg that if he decided to accept the new responsibilities, the IR department would work with him to provide a reasonable accommodation that would allow him to support the essential functions of the role.[30]  Mr. Malzberg did not respond to Ms. Taveras' email at all, but rather ignored the invitation to engage in the interactive process.[31]  Mr. Malzberg did not apply to any other positions within the NYU system and refused to accept the IR position that was offered.[32]

Instead, on April 1, 2019, Mr. Malzberg bizarrely showed up at the FGP site seeking to perform the eliminated position from which he had already been released on February 14, 2019.[33]  Mr. Alexa travelled to the FGP site and once again offered Mr. Malzberg the new

---

[26] Gilbride Decl., Ex. "B," Malzberg Dep. at pp. 213-20; Gilbride Decl., Ex. "G," Taveras Dep. Tr. at pp. 62, 67.
[27] Gilbride Decl., Ex. "G," Taveras Dep. Tr. at pp. 61 - 62; Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at p. 215.
[28] *See* Gilbride Decl., Ex. "H."
[29] Id.
[30] *See* Gilbride Decl., Ex. "H"; Gilbride Decl., Ex. "G," Taveras Dep. Tr. at pp. 62.
[31] The parties dispute the substance of Mr. Malzberg's prior communications with HR, but that dispute is not material because the parties do not dispute this last interaction with HR and Mr. Malzberg's failure to respond to Ms. Taveras or that Mr. Malzberg simply never accepted the new job responsibilities.
[32] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 189. 201-2, 210-1.
[33] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 206-7

7466798

position, but Mr. Malzberg declined.[34]  Mr. Alexa provided him with a letter on April 1, 2019 (the letter is dated March 26, 2019) explaining that his job responsibilities had been changed to meet the operational needs of the department as communicated to him on February 14, 2019.[35] The department originally requested those changes be implemented as of March 5, 2019, but when Mr. Malzberg informed Dr. Rybak that he had found another opportunity within NYU, that date was extended until the end of March.[36]  It was agreed that Mr. Malzberg would work in the prior role until either he started the new position or the end of March.[37]  The letter concluded by telling Mr. Malzberg that he needed to move into his new role as of April 1 and his failure to do so would result in his release from his position at NYU.[38]  Mr. Malzberg again declined the new position, left and was released from his position at NYU.[39]

## **PROCEDURAL HISTORY**

Plaintiff commenced this action in the United States District Court for the Southern District of New York on October 30, 2019, alleging that the Defendant discriminated against him on the basis of his disability in violation of the Americans with Disabilities Act ("ADA") and the New York City Human Rights Law ("NYC HRL") by failing to offer him reasonable accommodations for his disability and constructively discharging him. NYU filed an Answer and Affirmative Defenses to Plaintiff's Complaint on January 24, 2020 (Docket No. 15).

---

[34] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 201-2, 208, 210-1; Gilbride Decl., Ex. "I," Alexa Dep. Tr. at pp. 135-8.
[35] *See* Gilbride Decl., Ex. "C," Malzberg Deposition. Ex. 18.
[36] Id.
[37] Id.
[38] Id.
[39] Gilbride Decl., Ex. "I," Alexa Dep. Tr. at pp. 142-6; Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 208 -11.

7466798

## STANDARD OF LAW

Summary judgment is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555, 91 L. Ed. 2d 265 (1986) (citations omitted). "[T]he salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials— apply no less to discrimination cases than to commercial or other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (citations omitted).

Summary judgment should be granted when there are no genuine issues of material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. At this stage, the evidence must be construed in the light most favorable to the non-moving party and all reasonable inferences drawn in its favor. Fed. R. Civ. P. 56(c).   "Where the party opposing summary judgment bears the burden of proof at trial, summary judgment should be granted if the moving party can 'point to an absence of evidence to support an essential element of the nonmoving party's claim.'" *Wellington v. Spencer-Edwards*, No. 16 CIV. 6238 (AT), 2019 WL 2764078, at *1 (S.D.N.Y. July 1, 2019) (quoting *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Unsupported allegations do not create a material issues of fact and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," he must come forward with "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (emphasis in original) (internal citations omitted). [A]bsent a showing of 'concrete evidence

from which a reasonable juror could return a verdict in [the non-moving party's] favor,' summary judgment must be granted to the moving party. Evidence which is merely 'colorable, conclusory, speculative or not significantly probative' is insufficient to withstand a summary judgment motion." *Jermosen v. Coughlin*, 877 F.Supp. 864, 867 (S.D.N.Y.1995) (citations omitted).  Mr. Malzberg cannot establish the essential elements of his claim and fails to point to evidence establishing a genuine issue of material fact on his causes of action.  Accordingly, Defendant is entitled to judgment as a matter of law.

## <u>ARGUMENT</u>

Discrimination claims under the ADA are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff bears the burden of proving a prima facie case of discrimination by a preponderance of the evidence. Once the plaintiff has established a prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for its decision. If the defendant furnishes such a reason, the plaintiff must then show that the employer's proffered reason was pretextual and that the real reason was discrimination.

A plaintiff makes out a *prima facie* case of failure to accommodate under the ADA, if he can show that: (1) he is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, he could perform the essential functions of his job; and (4) the employer refused to make such accommodations. *McMillan v. City of New York*, 711 F.3d 120, 125-6 (2d Cir. 2013) (citing *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)). Here, Plaintiff has failed to establish a *prima facie* case because he has failed to demonstrate that he meets the first prong of a failure to accommodate claim: that he has a disability within the meaning of the ADA.

7466798

Plaintiff's claim further fails because cannot demonstrate that he could perform the essential functions of the new position with a reasonable accommodation since he failed to engage in the interactive process with the Hospital.

## POINT I

## PLAINTIFF DOES NOT HAVE A DISABILITY WITHIN THE MEANING OF THE ADA

Under the ADA, a "disability" can be one of three things: (1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1). Here, Plaintiff lacks a "disability" under any of the three meanings of the ADA. The Second Circuit employs a three-part test to determine whether an individual is disabled: a plaintiff must "(1) show that [he] suffers from a physical or mental impairment, (2) identify the activity claimed to be impaired and establish that it constitutes a major life activity, and (3) show that [his] impairment substantially limits the major life activity previously identified." *Melendez v. Cty. of Westchester*, No. 17-CV-9637 (NSR), 2019 WL 251731, at *8 (S.D.N.Y. Jan. 16, 2019), on reconsideration, No. 17-CV-9637 (NSR), 2019 WL 297519 (S.D.N.Y. Jan. 23, 2019) (quoting *Weixel v. Bd. of Educ.*, 287 F.3d 138, 147 (2d Cir. 2002)) (internal quotations omitted). To constitute a disability, an impairment must not merely affect a major life activity, it must 'substantially limit' that activity. *Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 300 (S.D.N.Y. 2003) (quoting *E.E.O.C. v. Yellow Freight Sys., Inc.*, No. 98 CIV. 2270(THK), 2002 WL 31011859, at *13 (S.D.N.Y. Sept. 9, 2002)). Thus, a plaintiff who showed that he had an impairment and that the impairment affected a major life activity would nonetheless be ineligible [to prevail upon a further showing of discrimination] if the limitation of the major life activity was not substantial. *Id.* (quoting *Colwell v. Suffolk Cty. Police Dep't*, 158 F.3d 635, 640–41 (2d

9

Cir. 1998)). Mr. Malzberg alleges two medical issues constitute a disability under the ADA: back pain and surgically corrected eye impairments.[40] Neither of these purported issues meet the definition of a disability under the ADA.

### A.  Plaintiff's Alleged Back Pain is Not a Disability Under the ADA

Mr. Malzberg contends that his "chronic back pain"[41] constitutes a disability under the ADA. This is simply untrue. The only treatment Mr. Malzberg sought for his back pain consisted of a two MRI scans he purportedly underwent in 2006 and 2008,[42] over a decade before he was offered the IR PA position.[43] At no point did Plaintiff provide these records to NYU or seek any further medical treatment during the eleven (11) years following these scans. He also made no mention of any difficulty performing his job duties or need for an accommodation.[44] At the time the proposed new job was offered to him, he was not under the care of any physician for purported back pain and had received no instruction from a physician that his activity should be restricted in any manner.[45] Plaintiff cannot demonstrate any disability in February – March 2019.

### 1.  Plaintiff's Back Pain Does Not Substantially Limit A Major Life Activity

Courts carefully distinguish impairments which merely affect major life activities from those that substantially limit those activities. *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998). While Plaintiff's back pain might have been uncomfortable, the fact that he did not seek medical treatment for over ten (10) years speaks volumes. There is simply no evidence

---

[40] Gilbride Decl., Ex. "A," Complaint ¶¶ 25, 27-28.
[41] Gilbride Decl., Ex. "A," Complaint ¶¶ 33, 39.
[42] Gilbride Decl., Ex. "A," Complaint ¶ 33, Gilbride Decl., Ex. "B," Malzberg Dep, Tr. at pp. 213-4.
[43] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 213-4.
[44] Significantly, Plaintiff's Complaint alleges that Dr. Sista asked Plaintiff to return to IR in 2017, but Plaintiff "declined the opportunity…because he suffered from chronic back pain." Gilbride Decl., Ex. "A," Complaint ¶ 32. At that time Plaintiff did not request accommodations or explain any parameters to his back pain so that NYU could attempt to find accommodations that would enable Mr. Malzberg to perform the position in IR.
[45] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp., 261-2

7466798

that it impacted his ability to perform his job at any point during his employment at the Hospital as he never sought any accommodation from the Hospital.

The Court in *Norman v. NYU Langone Health Sys.*, 492 F. Supp. 3d 154, 164 (S.D.N.Y. 2020) engaged in that careful analysis. The plaintiff alleged that her allergy to the flu vaccine constituted a disability that warranted an accommodation based on two previous adverse reactions to the vaccine. However, she did not seek any further medical attention after her reactions. The Court held that Plaintiff had not set forth evidence that she had a substantial limitation of a major life activity and therefore her allergy did not constitute a disability within the meaning of the ADA. *Id.* at 165.  Here, plaintiff was not under the care of any physician for his back pain at the time in question and had not received any treatment for over a decade. Plaintiff's self-serving testimony is not sufficient – "self-diagnosis…does not constitute an impairment.  There is no competent medical diagnosis …and so there can be no impairment." *Santiago v NY City Police Dep't*, No. 05-CV-3035, 2007 U.S. Dist. LEXIS 91880, at *20 (S.D.N.Y. Dec. 14, 2007).

In *Castagnozzi v. Phoenix Beverages, Inc*. the plaintiff worked as a sales representative in which he drove a sales route, lifted, carried, and climbed stairs carrying more than 25 pounds as essential duties of his job. *Castagnozzi v. Phoenix Beverages, Inc.*, 208 F. Supp. 3d 461, 464 (E.D.N.Y. 2016). While driving his sales route, Castagnozzi was injured and suffered a neck injury. Plaintiff's position was eliminated during a restructuring and he was offered a merchandiser position – a more physically demanding position – which he accepted. *Id.* at 465. Plaintiff admitted that he never orally told his supervisor "that he was disabled, could not perform the duties of a merchandiser, and needed a reasonable accommodation." *Id.* at 467. The Court held that plaintiff's neck injury was a physical impairment, but did not constitute a

11

disability because he did not produce any evidence that it substantially limited his ability to lift, stand, sit or work at any time after he returned to work. *Id.* at 474.  Similarly, here, Mr. Malzberg did not provide the Hospital with any evidence that he would not be able to perform the essential functions of the new position.[46]  In fact, he never even agreed to discuss the new position or what was required to perform that position.[47]  He simply refused to discuss it with anyone at the Hospital.

Mr. Malzberg's alleged "impairment" stemming from his "chronic back pain" is, at best, a medical issue akin to those experienced by the plaintiffs in *Norman* and *Castagnozzi*. Like Norman, Mr. Malzberg did not seek medical attention for his alleged back pain for over a decade, and like Castagnozzi, he never told any supervisor that he could not perform the duties of his job in FGP and HJD.  He never accepted the new job, so there was simply no opportunity to discuss whether he could perform it, with or without a reasonable accommodation.  As set forth more fully in Point II below, he did not request a reasonable accommodation from anyone at NYU at any point during his employment. Mr. Malzberg cannot show that his alleged impairment – his alleged back pain – substantially limited a major life activity, and therefore his alleged back pain is not a disability under the meaning of the ADA.  See, *Sussle v. Sirina Protection Systems Corp.,*259 F. Supp.2d 285 (S.D.N.Y. 2003) (plaintiff's failure to provide evidence of his Hepatitis C diagnosis or treatment for Hepatitis C defeated his argument that he was disabled).

### 2.  Plaintiff Has No Medical Evidence of His Alleged Back Pain

Plaintiff contends – with no medical diagnosis, no prescribed limitation on his physical movements, and without seeing a doctor for treatment in over a decade – that his back pain

---

[46] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 120-1.
[47] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 134-6.

constitutes a disability. This self-diagnosis is insufficient to meet the definition of a disability under the ADA. Notably, in *Sussle v. Sirina Protection Systems Corp*, the record consisted primarily of the Plaintiff's declaration and a transcript of his deposition testimony based solely on plaintiff's personal characterizations of the limitations without a reference to any medical evidence to substantiate the extent of his limitations. *Id.* at 301. The Court held that this self-diagnosis was insufficient to constitute a disability under the ADA. *Id.*

Courts in the Southern District have repeatedly held that a plaintiff must submit medical evidence to demonstrate that a physical impairment substantially limits his performance of a major life activity. *See Vitti v. Macy's Inc.*, No. 14-CV-5108 (RJS), 2017 WL 6405848, at *7 (S.D.N.Y. Sept. 29, 2017), aff'd, 758 F. App'x 153 (2d Cir. 2018) ("Viti has not adduced any competent medical evidence that any of her claimed impairments substantially limits one or more major life activities …[and thus,] cannot defeat a motion for summary judgment by relying … on her own unsubstantiated assertions about her difficulty breathing, walking, sleeping, and socializing"); *Nadel v. Shinseki,* 57 F. Supp. 3d 288, 296 (S.D.N.Y. 2014) (plaintiff's claims that he is depressed, has difficulty sleeping, walking and performing daily activities without assistance, without further evidence was insufficient to demonstrate a substantial limitation on his major life activities); *Douglas v. Victor Cap. Grp.*, 21 F. Supp. 2d 379, 392 (S.D.N.Y. 1998) ("Douglas' testimony as to the (alleged) limits on his ability to walk, without supporting medical testimony, simply is not sufficient to establish his prima facie case under the ADA.").

So, too, Mr. Malzberg failed to produce any medical evidence showing that his back pain substantially limits a major life activity, and therefore, he cannot show that his alleged back injury meets the definition of a disability under the ADA.

13

Plaintiff's attempt to categorize his back pain as a disability using records obtained on the last day of his employment, and based on the report of an expert witness after his separation from NYU, is similarly unavailing. Even if these records showed that Plaintiff's back pain met the definition of a disability under the ADA, which they do not, he cannot use subsequently obtained medical evidence to show that he had a disability at the time of an employment decision. *See Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 719, 725 (2d Cir. 1994) (holding that Mount Sinai had no notice of Plaintiff's medical condition and she could not use subsequent medical evidence to show that she was handicapped at the time of the relevant employment decision). Courts look to whether the plaintiff was disabled at the time the accommodation was sought. See *Emanuel v. New York* , No. 8 Civ. 1250, 2009 WL 4277075, at *7 & n.7 (S.D.N.Y. Nov. 25, 2009) (finding medical incident two months after request for an accommodation not probative as to whether plaintiff was disabled at the time an accommodation was sought); *Van Ever v. N.Y. State Dep't of Corr. Servs.* , No. 99 Civ. 123448, 2000 WL 1727713, at *3 (S.D.N.Y. Nov. 21, 2000) ("Thus, a plaintiff must first demonstrate substantial impairment of a major life activity at the time the accommodation is sought to trigger the reasonable accommodation requirement of the ADA.")

Furthermore, Mr. Malzberg's self-serving testimony and characterization of his impairments are insufficient to establish a disability under the meaning of the ADA. District courts in the Second Circuit have repeatedly held that a plaintiff's personal testimony which describes the alleged limits that affect a major life activity, "without supporting medical testimony, simply is not sufficient to establish his prima facie case under the ADA." *See Sussle*, 269 F. Supp. 2d at 301 (collecting cases); *Zuppardo v. Suffolk Cty. Vanderbilt Museum*, 19 F. Supp. 2d 52, 53 (E.D.N.Y. 1998), aff'd, 173 F.3d 848 (2d Cir. 1999) (holding that no reasonable jury could conclude that plaintiff was disabled within the meaning of the ADA where Plaintiff did not supply any medical evidence in support of his allegations concerning his alleged

14

difficulty walking, sitting, standing, pushing and pulling, in addition to mental impairments that would have a significant impact on his ability to work); *Charlotten v. May Dep't Stores Co.*, No. 97 CIV. 8962 (HB), 1998 WL 635547, at *4 (S.D.N.Y. Sept. 16, 1998) (no reasonable jury could conclude that plaintiff was disabled within the meaning of the ADA where plaintiff failed to produce any evidence —such as an affidavit from her physician at the time of the request— that her medical conditions prevented her from performing any employment responsibilities).

Plaintiff provided NYU with absolutely zero medical documentation of any medical impairment during his employment.[48] Plaintiff took medical leave on a number of occasions during his 18-year career at NYU, but when he returned to work, Mr. Malzberg did not provide any medical documentation of any restrictions on performing his duties.[49] He also did not request any accommodations to allow him to perform his job. Plaintiff claims that his back pain would impact his ability to perform the offered job in IR, which involved similar duties as the position he held until his separation from NYU, yet at no point did he inform NYU of any difficulty performing his job, provide NYU with any medical documentation of his back pain, or request any accommodation. Accordingly, Plaintiff cannot establish a *prima facie* case of disability discrimination.

**B.  Plaintiff's Corrected Eye Impairments Are Not a Disability**

In determining whether an impairment is "substantially limiting", the court should "consider (1) the 'nature and severity of the impairment;' (2) the 'duration or expected duration of the impairment;' and (3) the 'permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.'" *Fagan v. United Int'l Ins. Co.*, 128 F.

---

[48] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 120-1,  251.
[49] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 251-3.

15

Supp. 2d 182, 185 (S.D.N.Y. 2001) (quoting *Murray v. Sysco Corp.*, 1998 WL 160826 (N.D.N.Y.1998) and citing 29 C.F.R. § 1630.2(j)(1)).

Temporary disabilities do not trigger the protections of the ADA because individuals with temporary injuries are not disabled persons within the meaning of the ADA. *Dudley v. N.Y.C. Housing Auth.*, No. 12 Civ. 2771(PGG), 2014 WL 5003799, at *34 (S.D.N.Y. Sept. 30, 2014). *See Veldran v. Brennan*, 408 F. Supp. 3d 111, 116 (E.D.N.Y. 2019), aff'd sub nom. *Veldran v. Dejoy*, 839 F. App'x 577 (2d Cir. 2020) (Plaintiff's injury did not affect his work as a major life activity because he was able to report to work less than a week after the accident with no physical restrictions at all); *Holmes v. New York City Dep't of City Wide Admin. Servs.*, No. 14-CV-8289 KBF, 2015 WL 1958941, at *4 (S.D.N.Y. Apr. 30, 2015) ("Holmes' right knee injury is a temporary, transitory impairment that does not qualify as a disability under the ADA"); *Nadel v. Shinseki*, 57 F. Supp. 3d 288, 296 (S.D.N.Y. 2014) (Plaintiff's knee injury which impaired his ability to walk or perform manual tasks was not a substantial impairment as his injury was temporary and lasted fourteen weeks); *Amendola v. Henderson*, 182 F. Supp. 2d 263, 275 (E.D.N.Y. 2001) ("Plaintiff cannot demonstrate that he had anything more than a temporary physical impairment following each of his foot surgeries…[a]ccordingly, plaintiff fails to demonstrate that he has an impairment which substantially limits the major life activities of walking and working").

Mr. Malzberg alleges that the four eye surgeries he underwent, for a detached retina and to correct cataracts, constitute a disability. Mr. Malzberg admits that following his surgeries his vision is not impaired in anyway.[50] Significantly, in his Complaint, Plaintiff characterizes his eye

---

[50] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 251-3.

issues as "medical issues" or a "temporary disability."[51] Assuming *arguendo*, that prior to his surgeries Mr. Malzberg's vision was impaired, such an impairment was temporary, and fully corrected following his surgeries. Therefore, his eye issues were no longer an impairment when NYU offered Mr. Malzberg the IR position in February 2019. Accordingly, Mr. Malzberg's alleged eye impairments also do not constitute a disability under the meaning of the ADA, and NYU had no obligation to grant (unrequested) accommodations for any purported medical issues related to Plaintiff's eyes.

## POINT II

## PLAINTIFF FAILED TO ENGAGE IN THE INTERACTIVE PROCESS WITH NYU

Even assuming, *arguendo*, for the limited purposes of this motion that Plaintiff's purported medical issues constituted a disability within the meaning of the ADA, Plaintiff was still obligated to participate in the interactive process with his employer. Plaintiff's failure to accommodate claim should therefore be dismissed because he thwarted the interactive process by failing to participate or respond to NYU's offer to provide reasonable accommodations. Furthermore, Mr. Malzberg cannot show that he could perform the essential functions of the position with reasonable accommodations.

### A.  Mr. Malzberg Caused the Breakdown of the Interactive Process

The ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Felix v. New York City Transit Auth.*, 154 F. Supp. 2d 640, 658 (S.D.N.Y. 2001), aff'd, 324 F.3d 102 (2d Cir. 2003) (quoting *Jackan v. New York State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir.2000)). "In considering a claim regarding a breakdown in the interactive process, courts should attempt

---

[51] Gilbride Decl., Ex. "A," Complaint ¶ 31.

to isolate the cause of the breakdown [of the interactive process] and then assign responsibility." *Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 795 (S.D.N.Y. 2020) (citations and internal quotation marks omitted). "An employee who is responsible for the breakdown of that interactive process may not recover for a failure to accommodate." *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 946 (2d Cir. 2008).

The initial burden of requesting an accommodation is on the employee and it is only after such a request has been made that the employer must engage in the "interactive process" of finding a suitable accommodation. *Felix v. New York City Transit Auth.*, 154 F. Supp. 2d 640, 656–57 (S.D.N.Y. 2001), aff'd, 324 F.3d 102 (2d Cir. 2003) (citing *Stola v. Joint Indus. Bd.*, 889 F.Supp. 133, 135 (S.D.N.Y.1995)). "An employee seeking an accommodation is obliged to participate in this interactive process in order to help the employer identify the 'precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *Monterroso v. Sullivan & Cromwell*, LLP, 591 F. Supp. 2d 567, 579 (S.D.N.Y. 2008) (citing 29 C.F.R. § 1630.2(o)(3)). "An employee's provision of medical information is an indispensable aspect of that interactive process and where an employee fails to provide documentation sufficient to allow an employer to assess the parameters of the employee's disability, 'ADA liability simply does not follow.'" *Id.* (citations omitted).

Mr. Malzberg indisputably failed to engage in the interactive process. By Plaintiff's own admission, at no point did he request an accommodation, offer a proposed accommodation, or respond to NYU's offer to provide him with a reasonable accommodation.[52] Furthermore, as set forth *supra*, Mr. Malzberg never provided NYU with medical evidence of any purported

---

[52] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 141-2, 219-220.

disability to allow NYU to determine the feasibility or availability of any possible accommodations.

In *Noel v. BNY-Mellon Corporation*, the Court found that plaintiff's responsibility for the breakdown of the interactive process entitled the defendant to summary judgment on her failure to accommodate claim, where the plaintiff took even more proactive steps in the interactive process than Mr. Malzberg. *Noel v. BNY-Mellon Corp.*, No. 10 CIV. 9143 JSR, 2011 WL 4633884, at *1 (S.D.N.Y. Oct. 4, 2011), aff'd, 514 F. App'x 9 (2d Cir. 2013). There, the plaintiff injured her back in an automobile accident and took disability leave. *Id.* When she returned from leave, Noel informed her supervisor that her doctor recommended that she work in an ergonomic chair to reduce her back pain. *Id.* BNY considered and approved the request, but when BNY had not yet provided her with the chair a month later, plaintiff took long-term disability leave during which BNY determined it no longer needed her position. BNY asked plaintiff to apply for an open position, but she did not and defendant terminated her. *Id.* The Court granted defendant summary judgment on Plaintiff's failure to accommodate claim, finding that she "withdrew from the interactive process and thus cannot recover on her claim for failure to accommodate," and that no reasonable jury could find that she took a reasonable approach to resolving the problems that prevented her from returning to her job. *Id.* at *2.

Here, Mr. Malzberg did not even go as far as the *Noel* plaintiff, who approached her employer with a proposed accommodation for her back pain, suggested by a medical professional. When NYU informed Mr. Malzberg that his position was ending and offered him another job, he did not request an accommodation that would allow him to perform the offered position, nor did he provide Defendant with information about his alleged disability to enable NYU to determine what accommodations might be available or feasible. Instead of attempting to

19

engage in a dialogue with NYU regarding potential modifications to the position, job requirements, or job duties, Mr. Malzberg sought out a different position within the hospital.[53] When this avenue failed, he still did not discuss any way to make it possible for him to accept the offered position. Furthermore, even when NYU proactively offered to discuss reasonable accommodations for the position, he failed to engage in any dialogue such as proposing an accommodation or providing any medical evidence to assist with the formation of such an accommodation. Like the plaintiff in *Noel*, Mr. Malzberg's responsibility for the breakdown of the interactive process entitles Defendant to summary judgment. *Id.*

Similarly, in *Zito v. Donahoe,* the plaintiff requested that his employer provide accommodations for his disability and refused to perform certain tasks. *Zito v. Donahoe*, 915 F. Supp. 2d 440, 443-4 (S.D.N.Y. 2012). His employer tolerated Zito's refusal to perform certain tasks but requested that he provide medical documentation of his disability, which plaintiff refused to do. Id. at 444. The Court dismissed plaintiff's claim for denial of reasonable accommodations finding that the employer was entitled to request up-to-date documentation of plaintiff's disability and the appropriate accommodations and "Zito's failure to respond to USPS's requests clearly constitutes bad faith participation, if it can be called participation at all, in the interactive process for determining the appropriate accommodations." *Id.* at 448.

Mr. Malzberg admits that he did not respond to NYU's offer to discuss an accommodation.[54]  That failure alone mandates dismissal of this case. *Boughton v. Town of Bethlehem*, No. 1:13-CV-01583, 2015 WL 5306077, at *9–10 (N.D.N.Y. Sept. 10, 2015) (citing *Nugent v. St. Lukes–Roosevelt Hosp. Center*, 303 Fed.Appx. 943, 946 (2d Cir.2008) (plaintiff failed to respond to defendant, thus no reasonable jury could find that it was the employer who

---

[53] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 151-5.
[54] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 219-20.

7466798

terminated the interactive process).  In *Boughton*, the defendant solicited additional information from the plaintiff, and plaintiff's failure to respond led to the breakdown of the interactive process. So too, Mr. Malzberg is responsible for thwarting the interactive process by his failure to respond to NYU's written offer to discuss his alleged need for an accommodation. Moreover, each plaintiff in *Noel*, *Zito*, and *Boughton* requested accommodations from their employers, as a plaintiff is required to do in order to activate the interactive process. Mr. Malzberg did not even undertake that minimal effort – he did not request an accommodation and therefore gave NYU no opportunity to either participate or decline to participate in the interactive process. Nevertheless, Defendant attempted to engage in the interactive process with Mr. Malzberg.[55] Plaintiff frustrated the interactive process when he did not respond to NYU.

In Plaintiff's opposition to NYU's request to file a summary judgment motion, Plaintiff referenced *Goonan* for the proposition that NYU's offer of reasonable accommodations occurred too late to relieve NYU from liability under the ADA. *Goonan v. Fed. Rsrv. Bank of New York*, No. 12-CV-3859 JPO, 2014 WL 3610990 (S.D.N.Y. July 22, 2014). However, *Goonan* is easily distinguishable. In *Goonan*, Plaintiff, an employee of the Federal Reserve Bank of New York, experienced PTSD following 9/11, which he witnessed from his office located three (3) blocks from the World Trade Center. He sought treatment and assistance from an Employee Assistance Program; accordingly, his disability was indisputably known to his employer. In addition, *Goonan* requested a specific accommodation – to work from home – from management at several levels. In contrast, here, at no point did Mr. Malzberg provide NYU with any evidence or documentation of his alleged disability, nor did he at any point propose or request an accommodation that would enable him to perform the essential functions of his job. While NYU

---

[55] *See* Gilbride Decl., Ex. "H."

indisputably offered to engage in the interactive process with Plaintiff,[56] Mr. Malzberg failed to respond to this offer. In addition, Dr. Sista also told Plaintiff that NYU would work with him to figure out how he could perform his job while reducing any physical difficulty that would result from the position.[57] Furthermore, Plaintiff has admitted that at no time did he suggest any accommodation to NYU that would enable him to perform his job.[58]

Plaintiff is responsible for the breakdown of the interactive process and no reasonable jury could find that NYU is responsible for failing to accommodate Plaintiff's alleged disability. Accordingly, NYU is entitled to summary judgment on Plaintiff's claims.

### B. Plaintiff Cannot Show that He Can Perform the Essential Functions of the Job With or Without Reasonable Accommodations

"[A]n employee may not recover based on his employer's failure to engage in an interactive process if he cannot show that a reasonable accommodation existed at the time of his dismissal." *McElwee v. Cnty. of Orange*, 700 F.3d 635, 642 (2d Cir.2012). Even if Mr. Malzberg had not thwarted the interactive process by his conduct of failing to respond to NYU's offer to provide him with reasonable accommodations and failing to meet his burden of requesting an accommodation, Plaintiff still cannot fulfill the third prong of a failure to accommodate claim which requires him to show that an accommodation existed that would allow him to perform the essential functions of the offered position.

Mr. Malzberg contends that he declined the offered IR PA position because of his medical issues. At no point, however, did Mr. Malzberg engage in the interactive process or suggest an accommodation that would allow him to perform the essential functions of the job. Mr. Malzberg claims that he did not want to work in IR because he had to wear a heavy lead

---

[56] Id.
[57] Gilbride Decl., Ex. "E," Sista Dep. Tr. at pp.124-5.
[58] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 141-2.

apron and collar during procedures and stand for an extended period of time.[59] He also claims that he did not want to expose his eyes to radiation.[60] Dr. Akhilesh Sista testified that there were a lot of different things that Mr. Malzberg could do that would reduce any physical difficulty with the job and he was happy to work with him to carve out a position that took into account his issues, but that there was no opportunity to explore that because Mr. Malzberg was not interested in the position at all.[61] Even after Mr. Malzberg was unsuccessful in obtaining a different position in the NYU system, he still did not attempt to communicate with his superiors at NYU to determine any modifications to the proposed position that would enable him to fulfill the role. Mr. Malzberg never even attempted to show that he could perform the job with a reasonable accommodation, even if one was necessary for his non-existent disability, and that refusal to engage in the interactive process mandates dismissal of his claims.

A reasonable accommodation can include the modification of physical facilities, work schedules or equipment or job restructuring, but a reasonable accommodation does not mean the elimination of any of the position's essential functions. *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 261 (E.D.N.Y. 2015) (citing *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir.1991); *Pabon v. N.Y.C. Transit Auth.*, 703 F.Supp.2d 188, 196 (E.D.N.Y.2010)). "Essential functions are defined under EEOC regulations to mean the fundamental duties to be performed in the position in question, but not functions that are merely marginal." *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003).

---

[59] Gilbride Decl., Ex. "A," Complaint ¶ 16.
[60] Gilbride Decl., Ex. "A," Complaint ¶ 41.
[61] Gilbride Decl., Ex. "E," Sista Dep. Tr. at pp. 125 –7.

Mr. Malzberg alleges that the offered position would require him to stand for long periods of time while wearing heavy equipment and would expose him to radiation,[62] although he never even tried to discuss the position with anyone at the Hospital. He did not request any accommodations and denied that any protective equipment or accommodations would enable him to accept that position.[63]  Mr. Malzberg simply concluded, without any medical restriction, instruction or support, that he did not want the job.  There is simply no factual basis for any reasonable juror to conclude that he could not perform the essential functions of the position. Mr. Malzberg fails in his obligation to demonstrate either that he needed an accommodation to perform the job or that there was not an accommodation available for him to perform the job. Accordingly, his claims should be dismissed.

### POINT III

### THE COURT SHOULD ALSO DISMISS PLAINTIFF'S NYCHRL CLAIM

**A. laintiff Cannot Show That He Has A Disability Within the Meaning of the NYCHRL**

Similar to his failure under the ADA, Plaintiff is unable to establish his claims under the NYCHRL because he cannot show that he has a disability within the meaning of that statute.

The NYCHRL defines "disability" to include "any physical, medical, mental or psychological impairment, or a history or record of such impairment." New York City Admin. Code § 8-102. Although "disability" is defined more broadly under the NYC HRL, failure to accommodate claims are evaluated under the same standards as ADA claims. A plaintiff must still show that (1) he is a person with a disability under the meaning of the NYC HRL; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has

---

[62] Gilbride Decl., Ex. "A," Complaint ¶¶ 35 & 41.
[63] Gilbride Decl., Ex. "B," Malzberg Dep. Tr. at pp. 257-8.

refused to make such accommodations. *Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 73 (S.D.N.Y. 2016). Even given the broad and liberal construction afforded to claims under the NYC HRL, Plaintiff cannot show that the two medical issues he contends are disabilities, constitute an "impairment" sufficient to render these medical issues a disability within the meaning of the NYC HRL.

Courts look to whether the plaintiff was disabled at the time the accommodation was sought. *See Emanuel v. New York* , No. 8 Civ. 1250, 2009 WL 4277075, at *7 & n.7 (S.D.N.Y. Nov. 25, 2009) (finding medical incident two months after request for an accommodation not probative as to whether plaintiff was disabled at the time an accommodation was sought). Mr. Malzberg did not provide NYU with any medical diagnosis of his alleged medical issues, any medical records or even a note from a doctor explaining any physical limitations stemming from any alleged disability during his lengthy employment with NYU.

In *Cruz v. Shriro*, the plaintiff alleged that an allergic reaction constituted a physical impairment falling within the NYC HRL's definition of disability. *Cruz v. Schriro*, 51 Misc. 3d 1203(A), 36 N.Y.S.3d 407 (N.Y. Sup. Ct. 2016). Although no case law addressed whether an allergic reaction was a disability under the NYC HRL, the Court found that Cruz presented sufficient evidence, including medical documentation, to show that his allergic reaction represented a physical impairment falling within the NYC HRL's broad definition of disability. *Id.* (emphasis added). Mr. Malzberg has presented no such evidence here.

In *2 Perlman Drive, LLC v. Stevens*, the plaintiff did not allow her landlord into her apartment to treat for bugs because of her alleged medical condition. *2 Perlman Drive, LLC v. Stevens*, 54 Misc. 3d 1215(A), 54 N.Y.S.3d 613 (N.Y. Civ. Ct. 2017). In holding that plaintiff, who had a diagnosed lung condition, had a disability under the NYCHRL, the court found that

7466798

because plaintiff's exposure to certain chemicals used during the extermination process "worsens her overall health," she suffers from a "physical and medical…impairment." *Id.* at \*15.

Unlike either the *Cruz* or *Stevens* plaintiffs, Mr. Malzberg did not provide medical documentation of his any alleged disability to NYU, nor did he have a diagnosed condition which "worsens [his] overall health" like the plaintiff in *Stevens*. Accordingly, plaintiff's alleged disability falls well below the definition of an "impairment" which equates to a disability under the NYC HRL.

Furthermore, Plaintiff's failure to request accommodations for either medical issue, failure to provide medical documentation to NYU regarding either medical issue, or any interference with his performance resulting from his purported medical issues demonstrates that neither his corrected eye problems or alleged back pain are "physical impairments" which equate to a disability under the meaning of the NYC HRL. Accordingly, Plaintiff has not alleged a disability under the meaning of the NYC HRL and cannot establish a *prima facie* case of discrimination under that statute.

**B.  Plaintiff Also Failed to Engage In The Interactive Process Under the NYC HRL**

Even assuming *arguendo* that Plaintiff established that he had a disability within the meaning of the NYC HRL, which he has not, for the same reasons that Plaintiff's failure to accommodate claim under the ADA fails, his claim under the NYC HRL fails as well. Plaintiff's failure to engage in the interactive process (or "cooperative dialogue") is similarly futile to his NYC HRL claims. Under the NYC HRL, the "interactive process" requirement obligates the employer to "investigate an employee's request for accommodation and determine its feasibility." *Vangas v. Montefiore Med. Ctr.*, 6 F. Supp. 3d 400, 420 (S.D.N.Y. 2014) (citing *Phillips v. City of New York*, 66 A.D.3d 170, 176, 884 N.Y.S.2d 369, 373 (1st Dep't 2009). An

employee's request for an accommodation is therefore relevant to the determination of whether a reasonable accommodation can be made. *Jacobsen v. New York City Health & Hosps. Corp.*, 22 N.Y.3d 824, 835, 11 N.E.3d 159, 167 (2014). Here, Mr. Malzberg did not afford NYU the opportunity to investigate any request for accommodation or the feasibility of a requested accommodation because he did not even complete the first step in this process: requesting an accommodation.

Despite Mr. Malzberg's failure to request an accommodation, NYU indisputably offered to work with him on a reasonable accommodation, but Plaintiff refused to respond to this offer. Notably, "the NYC HRL requires only that Defendants engage in an interactive process with the disabled individual; it does not require that the individual be satisfied with that process or that the process result in the individual's preferred accommodation." *Stuart v. T-Mobile USA, Inc.*, No. 14-CV-4252 JMF, 2015 WL 4760184, at *11 (S.D.N.Y. Aug. 12, 2015). While Mr. Malzberg may not be satisfied with the manner in which NYU offered to provide him with reasonable accommodation – in an email summarizing an in-person meeting where he described his medical issues to an HR representative – NYU still fulfilled its obligation to engage in the interactive process, and Mr. Malzberg thwarted this process when he failed to respond to NYU's offer. Accordingly, Mr. Malzberg's NYC HRL failure to accommodate claim fails as well.

7466798

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Hospital's motion for summary judgment should be

granted and the Complaint dismissed with prejudice in its entirety

Dated: New York, New York
       July 21, 2021

Respectfully submitted,

KAUFMAN BORGEEST & RYAN LLP

_____
Joan M. Gilbride
Esther B. Feuer
*Attorneys for Defendant*
120 Broadway, 14th Floor
New York, New York 10271
Telephone: 212.980.9600
Facsimile: 212.980.9291
jgilbride@kbrlaw.com

TO:     (via ECF)

        Scott Simpson, Esq.
        BERANBAUM MENKEN LLP
        *Attorneys for Plaintiff*
        80 Pine Street, 33rd Floor
        New York, New York 10005
        Telephone: (212) 509-1616
        ssimpson@nyemployeelaw.com

7466798